# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 10, 2007

## STATE OF TENNESSEE v. REGINALD CORTEZ RICHARDSON

### Appeal from the Circuit Court for McNairy County
### No. 2011    J. Weber McCraw, Judge

### No. W2006-02372-CCA-R3-CD  - Filed October 18, 2007

The Appellant, Reginald Cortez Richardson, was convicted by a McNairy County jury of two counts of Class B delivery of cocaine and was sentenced, as a Range II offender, to concurrent twelve-year sentences in the Department of Correction. On appeal, Richardson raises the single issue of whether the evidence is sufficient to support his convictions. Following review, the judgments of conviction are affirmed.

### Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Ken Seaton, Selmer, Tennessee, for the Appellant, Reginald Cortez Richardson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

The proof at trial established that Jason King, a confidential informant for the West Tennessee Drug Task Force, purchased .6 grams and .5 grams of cocaine from the Appellant on two separate occasions, with the purchase price being $100 for each transaction. On August 17, 2005, King first contacted the Appellant and arranged for the purchase of $100 of crack cocaine. At the time of this drug transaction, King believed the person he had contacted was Reggie Jamison. He later learned, however, that this person was actually the Appellant, "Reggie" Richardson. After advising drug task force agents of the arranged drug transaction, King was furnished money to purchase the cocaine and fitted with a listening device, which permitted task force agents to monitor the drug transaction. Agents followed King at a distance as he proceeded to the designated location on Purdy Road. Upon arriving, King saw the Appellant across the street from the address he had

been given. The Appellant, whom King had never seen before, crossed the street and greeted him. After introductions and a brief conversation, the Appellant "went in his hat and got the crack out of the hat," and King handed the Appellant $100. King then left the scene and returned to the prearranged meeting place and delivered the crack cocaine to the agents. King and Agent Maxedon reviewed the recording of the drug transaction, and Maxedon, who knew the Appellant, at trial, identified the voice on the tape as the Appellant's.

On September 16, 2005, King again called the Appellant to arrange for a second purchase of crack cocaine. After meeting with agents and being fitted with the listening device, King proceeded back to Purdy Road as instructed. On this occasion, he pulled into the driveway across the street from the original address he had been given, at which time the Appellant approached the car and, in exchange for $100, delivered to King a quantity of cocaine which the Appellant had kept in his hat. King never got out of his car, and, after receiving the crack cocaine, he left the location. He proceeded to the designated meeting place and delivered the crack cocaine to agents of the task force. The substances purchased from the Appellant on the two separate occasions were sent to the TBI crime laboratory, where testing established that the substances were cocaine based crack, weighing .6 grams and .5 grams respectively.

On February 13, 2006, a McNairy County grand jury returned an indictment against the Appellant charging him with two counts of delivery of cocaine, .5 grams or more. Following a jury trial, the Appellant was found guilty as indicted. The trial court subsequently imposed twelve-year sentences for each offense, as a Range II offender, with the sentences to run concurrently. Following the denial of his motion for new trial, the Appellant filed the instant timely appeal.

**Analysis**

On appeal, the Appellant asserts that the "evidence presented at trial was insufficient to justify a rational trier of fact from finding guilt beyond a reasonable doubt."[1] Specifically, the Appellant argues that he was "convicted entirely on the testimony of an unreliable undercover informant . . . [,]" because the audio recordings of the conversations between the Appellant and King were of no evidentiary value because of their poor quality. Moreover, he argues that, "King's credibility is of such a questionable nature that, as a matter of law, his testimony alone cannot be sufficient to convict the [Appellant] beyond a reasonable doubt," due to King's two prior theft convictions and his beneficial arrangements with the State as a confidential informant. Thus, the Appellant's entire argument regarding sufficiency of the evidence is essentially a challenge to the weight and credibility of King's testimony.

_____

[1]We note that the Appellant framed his actual issue in terms of whether the trial court "committed reversible error in failing to grant the [Appellant's] motion for judgment of acquittal or new trial because the evidence was insufficient to sustain [the two] conviction[s]." Nonetheless, his argument focuses only on the sufficiency of the convicting evidence. Regardless, the standard of appellate review is the same for both issues, as a trial court, in considering a motion for judgment of acquittal, must favor the State with the strongest legitimate view of the evidence, including all reasonable inferences to be drawn therefrom, and must discard any countervailing evidence. *State v. Price*, 46 S.W.3d 785, 818 (Tenn. Crim. App. 2000).

The Appellant's argument is misplaced. The relevant question upon a sufficiency review of a criminal conviction, be it at the appellate or trial level, is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See also* Tenn. R. App. P. 13(e); Tenn. R. Crim. P. 29(a). *Jackson v. Virginia* addresses two important aspects of a sufficiency review: (1) the manner of review of the convicting evidence; and (2) the standard of review for legal sufficiency. The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non-credible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime. Again, we emphasize our inquiry is not upon the weight of the evidence or its credibility but, rather, whether there is proof of the crime beyond a reasonable doubt.

In view of the controlling principles of *Jackson v. Virginia* and Rule 13(e), Tenn. R. App. P., we find it unnecessary to address the Appellant's argument that King's testimony was non-credible and, thus, raised a reasonable doubt as to the Appellant's guilt. Instead, we examine the record for evidence of guilt in the light most favorable to the State.

To support a conviction for delivery of .5 grams or more of a Schedule II controlled substance requires proof: (1) that the Appellant delivered .5 grams or more of cocaine, a Schedule II controlled substance; and (2) that the Appellant acted knowingly. T.C.A. § 39-17-417(a)(2), (c)(1) (2006). It is undisputed that the two controlled substances delivered to the confidential informant, Jason King, were crack cocaine, a Schedule II substance, and that the cocaine delivered on each of the two occasions contained, by weight, .5 grams or more of cocaine. Moreover, in the light most favorable to the State, King's testimony established that the Appellant transacted and delivered cocaine to King on the dates of August 17 and September 16, 2005, in McNairy County. King positively identified the Appellant at trial as the person who delivered cocaine to him on both occasions. Moreover, both drug transactions between the Appellant and King were monitored and recorded by agents of the drug task force, and Agent Maxedon testified that the voice on the tape was that of the Appellant. From these facts, a jury could have rationally inferred proof of the elements of delivery of crack based cocaine over .5 grams on each of the two occasions as charged.

## CONCLUSION

Based upon the foregoing, the judgments of conviction are affirmed.

_____
DAVID G. HAYES, JUDGE